[Cite as *Schlabach v. Kondik*, 2017-Ohio-8016.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DOUGLAS SCHLABACH | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 16 HA 0017 |
| VS. | ) | |
| | ) | OPINION |
| JOAN KONDIK, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas, Harrison County, Ohio
Case No. CVH-2015-0078

JUDGMENT:                                    Affirmed.

APPEARANCES:
For Plaintiff-Appellant                    Attorney Eric Johnson
12 West Main Street
Canfield, Ohio 44406

For Defendants-Appellees                Attorney William Williams
Attorney Matthew Onest
4775 Munson Street, N.W.
P.O. Box 36963
Canton, Ohio 44735-6963

Attorney John Estadt
Attorney Kyle Bickford
46457 National Road West
St. Clairsville, Ohio 43950

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: September 29, 2017

DeGENARO, J.

{¶1} Appellant, Douglas Schlabach appeals the trial court's summary judgment in favor of Appellees, Daniel and Nancy Sinclair, and Dennis Macko and Anne Hausmann-Macko, and denying his cross-motion for summary judgment in this equitable action for deed reformation. Schalbach contends that the trial court erred by considering parol evidence, and applying the wrong statute of limitations, which resulted in an erroneous disposition of the parties' cross motions for summary judgment. Although the trial court erred in considering parol evidence, it nonetheless correctly concluded that Schlabach's claims against Appellees are time barred. Thus, for the following reasons, the trial court's summary judgment in favor of Appellees is affirmed.

{¶2} In 1982, the Berrys entered into an oil and gas lease with Floyd Kimble, encumbering 957 acres of their property. The oil and gas lease contained an initial ten-year term, which continues in perpetuity so long as oil and gas or their constituents exist in paying quantities on the property. Wells on the property are producing in paying quanties. Pertinent to this appeal the lease, in addition to royalties, provides:

> The Lessor has the right to approve the location of all wells, tanks, pipelines and roadways. Lessee will utilize Lessor's equipment wherever possible to do reclamation work. Lessor will receive sufficient free gas for one dwelling for each well drilled.

{¶3} In 1985, Kimble executed a cancellation and release of the oil and gas lease on the Berry property, with the exception of three tracts of land, which, in 1999, Mrs. Berry transferred 160 acres of those tracts to Schlabach. The record demonstrates and the parties do not dispute that Mrs. Berry transferred both the surface and mineral rights to Schalbach, subject to the oil and gas lease.

{¶4} Within a year, Schlabach subdivided his property and entered into purchase agreements with various individuals, including the Sinclairs, on June 23, 2000, and the Mackos on September 30, 2000. Both the Sinclairs and the Mackos

executed identical one-page form purchase agreements, which read, in pertinent part, "8. **ALL MINERAL RIGHTS** shall pass to **BUYER**. **SELLER** reserves rights to any existing leases." (Emphasis in original)

{¶5} In 2010 or 2011, Schlabach realized that he might have the right to collect royalties under the lease, and discovered that the reservation of rights in the lease provided for in the purchase agreements had been omitted from the Sinclair and Macko deeds as well as some but not all of the other deeds. Schlabach initially asked the purchasers to voluntarily reform the deeds and some agreed. Because Appellees refused to do so voluntarily, Schlabach filed an equitable action for deed reformation based upon mutual mistake on July 16, 2015.

{¶6} During discovery, Schlabach provided conflicting testimony regarding the rights he intended to reserve in the Sinclair and Macko purchase agreements. When asked to describe those rights at his deposition, he responded "All the rights that go with an oil and gas lease; location of wells, amending, future unitization for different formations, I guess. And there is a royalty percentage." However, later in his testimony, Schlabach was asked if he intend to reserve the same rights in both the Sinclair and another agreement wherein he reserved the right to royalties and other types of payment. He responded yes.

{¶7} In resolving the parties' cross-motions for summary judgment, the trial court relied on Schlabach's statement to conclude that the Sinclair and Macko agreements reserved only the right to royalties. As a result, the trial court reasoned Schlabach's claim was to recover personal property interests, governed by the ten-year statute of limitations in R.C. 2305.14. The trial court rejected Schlabach's argument that he retained something greater than the right to royalties in the purchase agreements; specifically, "the right to approve the location of all wells, tanks, pipelines and roadways." He posits that this constitutes an interest in land and thus the 21 year statute of limitation in R.C. 2305.04 controls. Neither party disputes that the execution of the deeds on July 30, 2000 (the Sinclairs) and November 8, 2000 (the Mackos), started running the limitations clock.

**Parol Evidence**

**{¶8}** We will review Schlabach's assigned errors out of order and his second and third together for clarity of analysis, which assert respectively:

> The trial court erred in relying upon evidence outside the four corners of the parties' unambiguous purchase and sale agreement to determine its meaning.

> The trial court erred by basing its summary judgment upon a certain statement made within a deposition and ignoring other statements made on the same issue.

**{¶9}** An appellate court reviews de novo a trial court's decision to grant summary judgment, using the same Civ.R. 56(C) standards as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). For summary judgment to be granted, no genuine issue of material fact can remain to be litigated, the moving party is entitled to judgment as a matter of law, and viewing the evidence in favor of the non-moving party, reasonable minds can come to but one conclusion, which is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is material depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶10}** Schlabach bases his deed reformation claim upon mutual mistake which this Court described in a case involving similar circumstances:

> Based upon the testimony presented in the trial court, it is a justifiable conclusion that all parties were fully aware that, upon transfer of the real estate in question, the estate was to retain all of the mineral rights. Upon transfer of the real estate, the appellants mistakenly accepted the real estate without the agreed upon reservation. This was a mistake on their part. The appellee, in executing the deed, mistakenly left the

mineral reservation out of the transferring instrument. As such, there was a mistake on the part of both parties.

*Estate of Sudimak v. Ross,* 7th Dist. No. 94 C.A. 78, 1995 WL 697832 (Nov. 21, 1995).

**{¶11}** The party wishing to reform the deed must demonstrate the mutual mistake by clear and convincing evidence, which is the degree of proof necessary "to produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Miller v. Cloud*, 7th Dist. No. 15CO18, 2016-Ohio-5390, ¶ 25, citing *Huber v. Knock*, 1st Dist. Hamilton No. C–080071, 2008-Ohio-5900, ¶ 6.

**{¶12}** The trial court granted summary judgment because Schlabach asserted his claim beyond the 10 year catch-all statute of limitations, despite Schalbach's argument that the 21 year limitations period applicable to actions to recover title to and possession of real property governs this action. In order to apply the correct statute of limitations, the trial court had to determine the nature of the interest reserved by Schlabach in the purchase agreements. In doing so, the trial court relied on extrinsic evidence, which Schlabach contends was erroneous because the terms of the purchase agreements were unambiguous.

**{¶13}** Courts presume that the intent of the parties to a contract resides in the language they chose to employ. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus (1987). When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent that was not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 406, 374 N.E.2d 146, 150 (1978). Ambiguity is a matter of law for the court. *Id.* at syllabus.

**{¶14}** Conversely, where the language of a contract is unclear, ambiguous, or the circumstances surrounding the agreement vest the language with a special meaning, extrinsic evidence may be considered in an effort to give effect to the parties' intentions. *Kelly* at 132. Parol evidence is also admissible to demonstrate a mutual mistake. *Mangano v. Dawson*, 7th Dist. No. 93-C-72, 1995 WL 358685, *4

(June 13, 1995). However, "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000).

{¶15} Section eight of the purchase agreements is unambiguous; Schlabach reserved all rights under the lease, which include the rights to royalties and control the location of wells. Further, the alleged mutual mistake is that Schlabach's reservation of rights were *omitted in the deeds*, not that those rights were mistakenly *included in the purchase agreements.* As there is no ambiguity in section eight and no assertion of mutual mistake with respect to its inclusion in the purchase agreements, what Schlabach allegedly told Appelles about section eight is parol evidence which cannot be considered, and is irrelevant. Thus, the trial court erred in considering parol evidence in its determination of the applicable statute of limitations. Accordingly, Schlabach's second assignment of error is meritorious.

{¶16} As we have held that the trial court erred in considering any parol evidence when interpreting the purchase agreement, resolution of Schlabach's third assignment of error objecting to the specific evidence considered by the trial court is moot. App.R. 12(A)(1)(c).

## Statute of Limitations

{¶17} In his first and final assignment of error Schlabach asserts:

> The trial court erred in granting Defendants' motions for summary judgment and in denying Plaintiff's motion for summary judgment, by holding that Plaintiff's claim is governed by a ten year statute of limitations.

{¶18} In determining which statute of limitations applies, " 'courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors[;]

the form is immaterial.' " *Lawyers Coop. Publishing Co. v. Muething*, 65 Ohio St.3d 273, 277–278, 603 N.E.2d 969 (1992), *quoting Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) (per curiam).

**{¶19}** "Generally, Ohio courts have indicated that R.C. 2305.14 applies to actions exclusively in equity." *State ex. rel. Lien v. House*, 144 Ohio St.238, 58 N.E.2d 675 (1944). Further, "an action to reform a written instrument on the grounds of mistake comes * * * within the class provided for by [R.C. 2305.14], which limits the time within which the same may be commenced to 10 years after the cause of action accrues[.]" *Bryant v. Swetland*, 48 Ohio St. 194, 209, 27 N.E. 100 (1891). Although *Bryant* did not involve a deed, courts have nonetheless followed *Bryant*. "This request for reformation is more than a mere defense to the Sams' ejectment action. It is an action in itself, and is thus subject to the applicable statute of limitations. The applicable statute limits commencement of actions to ten years after the cause of action accrues." *Sams v. Nolan*, 4th Dist. No. 1326, 1987 WL 13947, *3 (July 1, 1987) (Internal citations omitted); *Bonham v. Hamilton*, 12th Dist. No. CA2006-02-030, 2007-Ohio-349, ¶ 31-33 cause dismissed, 2007-Ohio-6748, 31-33, 116 Ohio St. 3d 1222, 879 N.E.2d 775.

**{¶20}** Schlabach argues that the foregoing cases are distinguishable because neither of our sister districts considered the applicability of R.C. 2305.04, and that we should follow *Caldwell v. Caldwell*, 2nd Dist. No. 1201, 1978 WL 216144, *3 (May 31, 1978), which appears to be the only Ohio case addressing the applicability of the 21 year statute of limitations to a deed reformation case.

**{¶21}** *Caldwell* was an action for reformation of a deed and to quiet title by a plaintiff in possession of the property. In distinguishing the long-standing rule announced in *Bryant*, the Second District observed that the 1891 Supreme Court case "involved a written contract and does not involve a deed, a Land Contract or any other interest in real estate, legal or equitable." *Id.* at *4. However, *Caldwell* is distinguishable. The Second District relied upon the fact that the plaintiff was in possession of the real property and was the equitable owner, *Id.* at *5-6, reasoning

the action was to recover "title to [ ] real property."  Here, Schlabach is not seeking to recover title to real property; that issue is not in dispute.  Instead he is seeking to reform the deeds to vindicate and preserve his interest in a lease.

{¶22} Schlabach contends that the rights he reserved in the purchase agreements—to receive royalties and approve the location of all wells, tanks, pipelines and roadways—constitute an interest in land.

{¶23} Ohio has long recognized that minerals underlying the surface, including oil and gas, are part of the realty. *Pure Oil Co. v. Kindall*, 116 Ohio St. 188, 201–202, 156 N.E. 119 (1927); *Kelly v. Ohio Oil Co.*, 57 Ohio St. 317, 49 N.E. 399 (1897), paragraph one of the syllabus. While the mineral remains underground, it is in place and is "the same as any part of the realty." *Pure Oil* at 201; Kelly at 328. However, the minerals may be severed from the rest of the realty for purposes of separate ownership. *Pure Oil* at 202; *Gill v. Fletcher*, 74 Ohio St. 295, 302–303, 78 N.E. 433 (1906).  Unsevered minerals are real property; however, minerals become personal property when severed from the land. *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 88–89, 113 N.E.2d 865 (1953).  "Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance."  *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 243, 85 N.E.2d 379 (1949)

{¶24} An owner who conveys the surface estate may retain an interest in the mineral estate by reservation. *Pure Oil* at 202, 156 N.E. 119. Although the surface land may be separately owned, when the interests have been severed, "neither the owner of the surface interest nor the owner of the mineral interest has full ownership" because "[e]ach has rights that are subject to the rights of the other." *Snyder v. Ohio Dept. of Natural Resources*, 140 Ohio St.3d 322, 2014-Ohio-3942, 18 N.E.3d 416, ¶ 13. "Unless the language of the conveyance by which the minerals are acquired repels such construction, a severed mineral estate is considered to include those rights to use of the surface as are reasonably necessary for the proper working of the mine and the obtaining of the minerals." *Quarto Mining Co. v. Litman*, 42 Ohio St.2d

73, 83, 326 N.E.2d 676 (1975).

**{¶25}** There are five rights of a severed mineral estate: to develop (with ingress and egress), to receive bonus payments, delay rentals and royalty payments, and right to lease (executive right); and each can be separately transferred. *Eisebarth v. Reusser,* 7th Dist. No. 13MO10, 2014-Ohio-3792, 18 N.E.2d 477, ¶ 60. The owner of the mineral estate, whether or not they also own the surface estate, may convey to another the rights to the minerals that lie beneath the surface. See, e.g., *Brown v. Fowler*, 65 Ohio St. 507, 521, 524, 63 N.E. 76 (1902); *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 128, 48 N.E. 502 (1897) (even if lease is termed a sale of all the oil underlying the land, the oil remaining under the property after the lease expires belongs to the landowner).

**{¶26}** Under the first rule of contract construction, a court must determine whether the provisions of the agreement are unambiguous and, accordingly, can be applied as written. *Murral Inc. v. Shevetz Ents., L.L.C.,* 7th Dist. No. 15 MA 189, 2016-Ohio-7040, ¶ 32. A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). Review of an unambiguous written agreement is a matter of law for the court, which an appellate court reviews *de novo. Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 6th Dist. No. L–14–1144, 2015–Ohio–4879, ¶ 30.

**{¶27}** The purchase agreements clearly state that Schlabach reserved all rights of the lessor under the oil and gas lease. Schlabach concedes that he did not reserve an interest in the mineral rights, only in the rights granted by the oil and gas lease. In fact, the mineral rights on the Schlabach property belong to Kimble for the duration of the oil and gas lease, then transfer to Appellees upon termination of the lease. Therefore, the rights Schlabach reserved under the oil and gas lease are the right to collect royalties and the limited right to approve the location of all wells, tanks, pipelines and roadways.

**{¶28}** Schlabach contends that the rights he reserved constitute an interest in land as defined in *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, (2015), where the Ohio Supreme Court interpreted the phrase title transaction in R.C. 5301.47(F) by way of the legislature's definition: "any transaction affecting title to any interest in land. . . ." *Id.* at ¶ 32. In order to define the phrase interest in land, the *Buell* Court looked to the definition of an easement, that is, "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." *Id.* at ¶ 38, citing Black's Law Dictionary at 622. Relying on the definition of an easement, the Ohio Supreme Court concluded that an interest in land is "far broader than ownership of property. . . ." *Id.*

**{¶29}** In contrast to an easement, a license is "a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interests in the land." *Varjaski v. Pearch*, 7th Dist. No. 04 MA 235, 2006-Ohio-5268, ¶12, quoting *DePugh v. Mead Corp.* (1992), 79 Ohio App.3d 503, 511. A license has also been defined as " 'an authority to do a particular act or series of acts upon another's land, without possessing any estate therein.' * * * One who possesses a license thus has the authority to enter the land in another's possession without being a trespasser." *Varjaski* quoting *Mosher v. Cook United, Inc.* (1980), 62 Ohio St.2d 316, 317 (citation omitted).

**{¶30}** There are two types of licenses: revocable licenses which are mere privileges to do an act on the land of another and licenses coupled with interest which are generally irrevocable. *Varjaski* at ¶ 13, citing *Kamenar Railroad Salvage, Inc. v. Ohio Edison Co.* (1992), 79 Ohio App.3d 685, 691. "If the parties intend the agreement to be permanent in nature, the license is said to be coupled with an interest." *Varjaski* citing *Cambridge Village Condo. Assn. v. Cambridge Condo. Assn.* (2000), 139 Ohio App.3d 328, 333. Thus, once a license is coupled with an interest, it becomes irrevocable and is a right to act on the land of another rather than a mere privilege. *Varjaski* citing *Kamenar*, 79 Ohio App.3d at 691. Notably, "[a]n

irrevocable license is said to be an easement rather than a license." *Id.*

**{¶31}** This Court has recognized that "[g]enerally, the term 'interest in land' means some portion of the title or right of possession, and does not include agreements which may simply affect the land. * * * Thus, easements are 'interests in land' subject to the Statute of Frauds, but licenses are not." *Varjaski* at ¶11, quoting *Ferguson v. Strader* (1994), 94 Ohio App.3d 622, 627 (citations omitted).

**{¶32}** This Court has also recognized that an easement does not demonstrate an ownership interest in real property in an action to quiet title. *Ochsenbine v. Cadiz*, 7th Dist. No. 04HA571, 2005-Ohio-6781, ¶ 20. The *Ochsenbine* panel observed that "an easement carries with it no title to the whole property, nor any right to exclude possession of the property as against others. *Id.* at ¶¶ 15-16.

**{¶33}** Here, Schlabach's interest in the lease is best described as a hybrid with attributes of both an easement and a license. Schlabach reserved a right, not a privilege, to control certain conditions on the property now owned by Appellees. Schlabach's right is not personal; So long as the lease is in effect, his rights are assignable. Had the language from the purchase agreements been included in the deeds, there is no question that purchasers would take the land subject to Schlabach's right to approve the location of all wells, tanks, pipelines and roadways. However, his limited right to control the land is revocable. Should Kimble terminate the lease, Schlabach's limited right to control the land is extinguished.

**{¶34}** Thus, Schlabach did not retain an interest in land. The proposed reformed deed would not vest Schlabach with a title interest or a possessory interest in the real property, but merely an assignable but revocable right to control certain activities on the property. Accordingly, this action is governed by the ten-year limitations period in R.C. 2304.14 and is time barred.

**{¶35}** In sum, the trial court erred in considering parol evidence regarding the unambiguous language in the purchase agreements. Nonetheless, the trial court correctly entered summary judgment in favor of Appellees and denied Schlabach's motion for summary judgment as this action is time barred by R.C. 2304.14.

Because this deed reformation case is not an action to recover title to or possession of real property, R.C. 2305.04 does not apply. Accordingly, the judgment entry of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.